David M. Jolley, SB # 191164
Margaret G. May, SB # 234910
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone:    (415) 591-6000
Facsimile:    (415) 591-6091
djolley@cov.com
mmay@cov.com

Linda C. Goldstein (*pro hac vice*)
Kimberly Zelnick (*pro hac vice*)
COVINGTON & BURLING LLP
1330 Avenue of the Americas
New York, New York 10019
Telephone:    (212) 841-1000
Facsimile:    (212) 841-1010
lgoldstein@cov.com
zelnickk@cov.com

Attorneys for Defendants
COWEN & CO., SG COWEN
SECURITIES CORPORATION and
COWEN AND COMPANY, LLC

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHARLES T. MADDEN; SHASHIDHAR ACHARYA, M.D.; ACHAUER FAMILY LIMITED PARTNERSHIP, a limited partnership; ANGELA ALLEVATO, M.D.; ROBERT A. BAIRD, M.D.; ANNETTE C. BERNHUT-CAPLIN, D.O.; THOMAS W. BRODERICK, M.D.; NANCY K. BROWNELL, M.D.; DAWN LYNN BRUNER, M.D.; ROBERT BUDMAN, M.D.; ROBERT WILLIAM BUSTER, M.D.; MICHAEL W. CATER, M.D.; ANNA LISA CHAVEZ, M.D.; JANAK R. CHOPRA, M.D.; RAMAN CHOPRA, M.D.; GASTON CILLIANI, M.D.; CARMELITA R. CO-CASQUEJO, M.D.; WILLIAM J. COLLINS, M.D.; LEO H. CUMMINS, M.D.; CHRISTINA K. ELLIOTT; MARK H. ELLIS, M.D.; STANLEY P. GALANT, M.D.; SHERWIN A. GILLMAN, M.D. and BONNIE S. GILLMAN, as Trustees for the Gillman Community Property Trust; KEITH L. GLADSTIEN, M.D.; STUART M. | Civil Case No.: C-06-4886 (JSW)<br><br>**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**<br><br>Date:    December 8, 2006<br>Time:    9:00 a.m.<br>Courtroom: 2<br><br>Judge:    Hon. Jeffrey S. White |

|   |   |
|---|---|
| 1 | GORDON; KENNETH E. GRUBBS, D.O.; NOAH GUTRECHT, M.D.; THOMAS A. HRYNIEWICKI, M.D.; R. JUDD JESSUP; STANLEY KANOW, M.D.; LEONARD FRANK KELLOGG JR., M.D.; MARK E. KRUGMAN, M.D.; LAWRENCE N. KUGELMAN; SANDRA BARRY LIEBERMAN, as successor in interest to Melvyn B. Lieberman, M.D., Trustee for the Melvyn B. Lieberman Trust; ALAN MADERIOUS, M.D.; MARK C. MARTEN; WILLIAM C. MCMASTER, M.D.; MARIA E. MIÑON, M.D.; JUDITH HARRISON-MONGE, M.D., as Trustee for the Harrison-Monge 1996 Family Trust; RONALD W. MORELAND; STANLEY K. NAKAMOTO, M.D.; CHRISTOPHER C. OHMAN; KUSM OHRI, M.D.; JACK M. OSBORN, M.D.; RICHARD T. PITTS, D.O.; NORMAN J. ROSEN, M.D.; ERIC MURROW ROWEN, M.D.; HELEN ROWEN, as Trustee for the Rowen Family Trust Dated May 5, 1982; MARK STEVEN ROWEN; MARSHALL ROWEN, M.D., individually and as Trustee for the Rowen Family Trust Dated May 5, 1982; SCOTT JEFFREY ROWEN, M.D.; PRAVIN V. SHARMA, M.D.; HAL S. SHIMAZU, M.D.; SIERRA VENTURES V, L.P., a California limited partnership; AISHA SIMJEE, M.D.; JAMES B. TANANBAUM; ALLAN G. WEISS; DANIEL L. WEISSBERG, M.D.; LINDA F. WEISSBERG; LAURENCE D. WELLIKSON, M.D.; ANGELA F. WINTHEISER; and ALLAN WONG, M.D., |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | Plaintiffs, |
| 21 | -v- |
| 22 | |
| 23 | COWEN & COMPANY, a New York limited partnership; SG COWEN SECURITIES CORPORATION, a New York corporation; COWEN & COMPANY, LLC, a Delaware limited liability company; and DOES 1 through 50, |
| 24 | |
| 25 | |
| 26 | Defendants. |
| 27 | |
| 28 | |

REPLY MEMO. IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Civil Case No. C-06-4886 (JSW)

**TABLE OF CONTENTS**

I.   Summary of Argument ................................................................................................ 1

II.  Argument .................................................................................................................... 2

    A.   *Madden V* Decided The "Identical Issue" Of Whether Alleged Misrepresentations In The Proxy Statement/Prospectus Were Made In Connection With A "Covered Security." ................................................................ 2

    B.   Plaintiffs Fail To Distinguish *Falkowski*, Which Compels The Conclusion That Any Alleged Misrepresentations Were Made In Connection with A "Covered Security." .................................................................. 4

    C.   The "Delaware Carve-Out" To SLUSA Preemption Does Not Apply to Plaintiffs' Claims Against Cowen. ........................................................................ 5

    D.   Plaintiffs' Claims For Negligent Misrepresentation And Professional Negligence Fail To State A Claim. .................................................. 6

    E.   The Complaint Should Be Dismissed Without Leave to Replead ........................ 8

III. Conclusion ................................................................................................................ 10

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ambassador Hotel Co. v. Wei-Chuan Investment*, 189 F.3d 1017 (9th Cir. 1999) ...................... 4

*In re Ames Department Stores Inc. Stock Litigation*, 991 F.2d 953 (2d Cir. 1993) .................... 4

*Desaigoudar v. Meyercord*, 223 F.3d 1020 (9th Cir. 2000) ........................................................... 9

*Falkowski v. Imation Corp.*, 309 F.3d 1123 (9th Cir. 2002) ................................................ 1, 4, 5

*Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192 (9th Cir. 2001) ....................................................... 6

*Hydranautics v. FilmTec Corp.*, 204 F.3d 880 (9th Cir. 2000) ..................................................... 3

*Kourtis v. Cameron*, 419 F.3d 989 (9th Cir. 2005) ....................................................................... 3

*Lipton v. Pathogenesis Corp.*, 284 F.3d 1027 (9th Cir. 2002) ...................................................... 8

*Luben Industries, Inc. v. United States*, 707 F.2d 1037 (9th Cir. 1983) ....................................... 2

*Madden v. Deloitte & Touche, LLP*, 118 Fed. Appx. 150 (9th Cir. 2004) ..........................*passim*

*Madden v. Deloitte & Touche, LLP*, 234 F.3d 1277, Nos. 99-71354, 99-71525,
    2000 WL 1171169 (9th Cir. 2000) .........................................................................................4

*Madden v. Deloitte & Touche, LLP*, No. 99-1516 (S.D. Cal. Oct. 13, 2000) ............................. 2

*Madden v. Deloitte & Touche, LLP*, No. 98-1089 (C.D. Cal. July 21, 1999) ............................. 8

*In re McKesson HBOC, Inc. Securities Litigation*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000) ....... 9

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S. Ct. 1503 (2006) ....................... 4, 8

*Missouri v. Jenkins*, 515 U.S. 70 (1995) ........................................................................................ 2

*In re Quarterdeck Office System, Inc. Securities Litigation*, No. 92-3970,
    1992 WL 515347 (C.D. Cal. Nov. 4, 1992) ........................................................................... 7

*Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991) .................................................... 9

## STATE CASES

*Bily v. Arthur Young & Co.*, 3 Cal. 4th 370 (1992) ............................................................. 1, 6, 7

*Mariani v. Price Waterhouse*, 70 Cal. App. 4th 685 (1999) ........................................................ 7

*Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282 (2004) ...................................... 7, 8

# FEDERAL STATUTES AND RULES

15 U.S.C. § 78bb(f)(3) ................................................................................................................. 5, 6

15 U.S.C. § 78j(b) .............................................................................................................................. 8

17 C.F.R. § 240.14a-9 ....................................................................................................................... 8

Fed. R. Civ. P. 15(a) .......................................................................................................................... 8

**I.    Summary of Argument**

Plaintiffs' opposition papers confirm that the Complaint must be dismissed. SLUSA preempts its claims, which also fail to meet the requirements of California law for pleading professional negligence and negligent misrepresentation against an investment advisor.[1]

1. Plaintiffs say that Cowen's alleged misrepresentations were not made in connection with a "covered security" because Cowen took no action after it consented, on February 10, 1998, to the publication of its Fairness Opinion in the Proxy Statement/Prospectus. In *Madden V*, Plaintiffs made and lost this very argument with respect to Deloitte's February 9 consent to the publication of its audit opinions in the same Proxy Statement/Prospectus. *Madden V* bars Plaintiffs from denying that Cowen's alleged misrepresentations in the Proxy Statement/Prospectus were made in connection with a "covered security."

2. Even if *Madden V* was not controlling, Plaintiffs cannot distinguish the Ninth Circuit's holding in *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1129 (9th Cir. 2002), that alleged misrepresentations with respect to securities that are not themselves a "covered security" meet SLUSA's covered security requirement if they can "be characterized as having been [made] 'in connection with the purchase or sale' of" a covered security. Plaintiffs do not cite anything in *Falkowski* suggesting that this holding is limited to vested options, as they contend.

3. The "Delaware carve-out" to SLUSA preemption does not save Plaintiffs' claims because those claims do not meet two statutory requirements: the claims are not asserted under the law of the state in which OCMCS was incorporated (Delaware); and Cowen's alleged misrepresentations were not made "by or on behalf of" OCMCS, SJMC or their affiliates.

4. Plaintiffs concede that they were not Cowen's clients; thus, they cannot assert a professional negligence claim against Cowen under *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370 (1992). Their negligent misrepresentation claim must also be dismissed because the Proxy Statement/Prospectus made it abundantly clear that Plaintiffs were not the intended beneficiaries of Cowen's advice to OCMCS.

---

[1] Capitalized or abbreviated terms not defined here are defined in Cowen's Memorandum in Support of Motion to Dismiss the Complaint.

## II.     Argument

Plaintiffs' Memorandum in Opposition to Cowen's Motion to Dismiss the Complaint ("Plaintiffs' Opp. Memo.") recycles arguments already made in their Motion to Remand, to be argued on the same day as this Motion to Dismiss.  To avoid undue repetition in this Reply Memorandum, Cowen will respectfully refer the Court to the relevant portions of its previously filed Memorandum in Opposition to Plaintiffs' Motion to Remand ("Cowen's Opp. Memo") instead of repeating those arguments below.

### A.     *Madden V* Decided The "Identical Issue" Of Whether Alleged Misrepresentations In The Proxy Statement/Prospectus Were Made In Connection With A "Covered Security."

Plaintiffs try to escape the collateral estoppel effect of *Madden V* by urging a false distinction: that "FPA's affiliated parties continued making representations after" the shares they purchased were listed on February 17, 1998, while "Cowen itself did not act after the FPA securities became authorized for listing on Nasdaq." Plaintiffs' Opp. Memo. at 11.  Cowen has already shown that its alleged misrepresentations were made *after* Plaintiffs' FPA shares were listed because they appeared in the Proxy Statement/Prospectus distributed to Plaintiffs *after* the shares were registered. *See* Cowen's Opp. Memo. at 15-16. Contrary to Plaintiffs' assertions, the allegations leveled against Cowen here are indistinguishable from the allegations made against two of "FPA's affiliated parties" in the prior action, defendants Deloitte and Volpe.

In the previous action, the *latest* alleged misrepresentations by defendants Deloitte and Volpe appeared in the very same Proxy Statement/Prospectus, dated February 17, 1998, that is at issue here. *See* Ex. 5 ¶¶ 27-41. In *Madden IV*, the District Court found that "alleged misrepresentations" appearing in this document were made *after* Plaintiffs' FPA shares were registered. *See Madden IV*, slip op. at 9.[2] In their appeal to the Ninth Circuit, Plaintiffs argued –

---

[2]     In an effort to circumvent the findings in *Madden IV*, Plaintiffs contend that "when a final appellate decision exists, prior interlocutory decisions at the appellate or trial levels have no issue preclusive effect." Plaintiffs' Opp. Memo. at 10. As Cowen demonstrated in its opposition to Plaintiffs' motion to remand, the law says otherwise.  *See* Cowen's Opp. Memo. at 15 n.8. Plaintiffs' erroneous legal statement lacks support since neither *Luben Industries, Inc. v. United States*, 707 F.2d 1037 (9th Cir. 1983), nor *Missouri v. Jenkins*, 515 U.S. 70 (1995), addressed the issue of the preclusive effect of findings in district court decisions, such as *Madden IV*, that were affirmed on appellate review.

1  exactly as they do here – that misrepresentations appearing in the Proxy Statement/Prospectus
2  had occurred before the February 17 registration date:

> The misrepresentations at issue occurred *before* the registration
> effectiveness date in December 1997 and January 1998, during the
> negotiations leading to the execution of the Merger Agreement on
> January 21, 1998, and in Deloitte's February 9, 1998 consent to
> the reissuance of its prior audit opinions on FPA. *No new
> misrepresentations occurred after February 17, 1998*, although
> FPA delivered certificates of its officers on March 20, 1998.

7  Plaintiffs' Opening Br., No. 99-1516, 2003 WL 22850033, at *19 (9th Cir. Oct. 1, 2003)
8  (emphasis added). The Ninth Circuit rejected Plaintiffs' argument when it affirmed the District
9  Court's judgment dismissing the state law claims against Deloitte and Volpe as preempted by
10  SLUSA.
11       The finding that misrepresentations in the Proxy Statement/Prospectus occurred after the
12  February 17 registration of Plaintiffs' FPA shares was *necessary* to the Ninth Circuit's ruling in
13  *Madden V* because, as here, Plaintiffs had not alleged that either Volpe or Deloitte engaged in
14  any conduct after Deloitte's February 9 consent to the inclusion of its opinion in the Proxy
15  Statement/Prospectus. Plaintiffs cannot now avoid the collateral effects of the Ninth Circuit's
16  decision by asserting that "all the representations alleged in th[e] complaint" were made *before*
17  the SEC approved the registration statement on February 17, 1998, when at least some of those
18  representations were made in the Proxy Statement/Prospectus of that date. Compl. ¶ 40. Since
19  "the issue necessarily decided at the previous proceeding is identical to the one which is sought
20  to be relitigated" here, *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005) (quoting
21  *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000)), Plaintiffs cannot contend
22  that statements in the Proxy Statement/Prospectus were "made" for purposes of SLUSA before
23  February 17, 1998.
24       Plaintiffs also try to distinguish *Madden V* by urging that since Cowen was investment
25  advisor to OCMCS, rather than to FPA, Plaintiffs' claims are not asserted "in connection with"
26  their purchase of FPA stock, but relate only to the OCMCS and SJMC shares they exchanged in
27  consideration of that FPA stock. Plaintiffs' Opp. Memo. at 10. Cowen has shown that Plaintiffs'
28  claims easily meet the "in connection with" requirement of SLUSA because they relate directly

to the investment value of the FPA shares that they received. *See* Cowen's Opp. Memo. at 9-14; s*ee also In re Ames Dep't Stores Inc. Stock Litig.*, 991 F.2d 953, 967 (2d Cir. 1993) ("when the fraud alleged is that the plaintiff bought or sold a security in reliance on misrepresentations as to its value . . . then whatever problems there may be with the case, a connection between the fraud and the transaction should not be one of them"); *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1131 (9th Cir. 2002) ("The claim that defendant concealed the impending accounting write-off sufficiently alleges fraud 'in connection with' a contract to sell Imation shares because it involves a misrepresentation about the value of the options."). Plaintiffs' assertion that their claims are not "in connection with" their acquisition of FPA shares if they are also "in connection with" their sale of OCMCS and SJMC shares is groundless, because SLUSA's "in connection with" element requires only that there be "more than some tangential relation to the securities transaction" in question. *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1026 (9th Cir. 1999). That standard is readily met here.

### B. Plaintiffs Fail To Distinguish *Falkowski*, Which Compels The Conclusion That Any Alleged Misrepresentations Were Made In Connection with A "Covered Security."

In *Madden III*, the Ninth Circuit held that it was "plausible" to read SLUSA's definition of "covered security" to mean FPA stock generally, rather than the specific shares sold to Plaintiffs. *Madden v. Deloitte & Touche, LLP*, 234 F.3d 1277, 2000 WL 1171169, at 2 (9th Cir. 2000).[3] In light of the Supreme Court's admonition to read SLUSA broadly, this Court should hold that "covered security" here refers to generally to FPA's Nasdaq-listed common stock. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S. Ct. 1503, 1510-11 (2006); Cowen's Opp. Mem. at 17.

More recently, in *Falkowski v. Imation Corp.*, 309 F.3d 1123 (9th Cir. 2002), the Ninth Circuit held that alleged misrepresentations with respect to unlisted stock options, which were not themselves a "covered security," nonetheless met SLUSA's requirements because they could "be characterized as having been [made] 'in connection with the purchase or sale' of

---

[3]     Contrary to Plaintiffs' contention at page 11 of their brief, Cowen's citation of *Madden III* complies with Ninth Circuit Rule 36-3(b)(i) because the Plaintiffs are estopped from saying that the term "covered security" unambiguously refers to specific shares of FPA stock.

1  Imation stock," which was a covered security. *Falkowski*, 309 F.3d at 1129. If this Court holds
2  that all of Cowen's alleged misrepresentations pre-date the February 17 Proxy
3  Statement/Prospectus, *Falkowski* would still compel the conclusion that they were made in
4  connection with FPA's Nasdaq-listed stock, which was concededly a "covered security."
5  Cowen's Fairness Opinion was not based on any analysis specific to the not-yet registered
6  shares of FPA stock to be acquired by Plaintiffs, but rather was expressly based on FPA's public
7  financial statements, filed with the SEC with respect to FPA's Nasdaq-listed stock. *See* Ex. 4 at
8  205-06.
9      Plaintiffs try to distinguish *Falkowski* by observing that *Falkowski* addressed "*vested*
10 *options.*" Plaintiffs' Opp. Memo. at 13. But *Falkowski*'s analysis of SLUSA's "covered
11 security" requirement does not turn on whether the Imation options were vested or not, but
12 rather on whether the alleged misrepresentations could "be characterized as having been [made]
13 'in connection with the purchase or sale'" of a covered security. *Falkowski*, 309 F.3d at 1129.
14 Plaintiffs offer no rationale as to why *Falkowski*'s holding should be limited to vested employee
15 stock options. This Court should follow *Falkowski* and hold that, to the extent Cowen's alleged
16 misrepresentations were made before February 17, 1998, they were nonetheless made in
17 connection with Plaintiffs' purchase of FPA stock, a "covered security" under SLUSA.

18     **C.**     **The "Delaware Carve-Out" To SLUSA Preemption Does Not Apply to Plaintiffs' Claims Against Cowen.**
19
20     In its opposition to Plaintiffs' motion to remand, Cowen has demonstrated that the so-
21 called "Delaware carve-out" to SLUSA is inapplicable because: (i) Plaintiffs' claims do not
22 arise under the law of Delaware; and (ii) Cowen's alleged misrepresentations were not made
23 "by or on behalf of" OCMCS or SJMC or any of their "affiliates." *See* Cowen's Opp. Memo. at
24 18, 20. Nothing in Plaintiffs' opposition papers undermines that showing.
25     The carve-out, by its terms, applies only to claims "based upon the statutory or common
26 law of the State in which the issuer is incorporated." 15 U.S.C. § 78bb(f)(3). Plaintiffs' claims
27 cannot arise under Delaware law, the state where OCMCS is incorporated, because the
28 Engagement Letter expressly provides that Cowen's engagement with OCMCS "*shall be governed by and construed in accordance with the laws of the State of California*" (Ex. 1, ¶ 12

1  (emphasis added)). Nor do Plaintiffs allege in their Complaint that *any* of the alleged

2  misconduct occurred in Delaware.  Plaintiffs do not even try to show how claims by non-

3  Delaware residents, most of whom live in *California* (*see* Compl. ¶ 2), against a *New York*

4  limited partnership that entered into an agreement, governed by *California* law, for work to be

5  performed out of the partnership's *San Francisco* office (*see* Compl. ¶ 18) possibly could be

6  governed by the law of Delaware.[4]

7  Plaintiffs also assert that "[t]he carve-out applies to actions by shareholders of acquired

8  corporations against allied parties for misrepresentations relating to mergers or acquisitions."

9  Plaintiffs' Opp. Memo. at 9. SLUSA, of course, does not use the term "allied parties," which

10 appears to have been tailor-made by Plaintiffs to suit their allegations here. SLUSA provides an

11 exception to federal preemption only for claims of misrepresentations "by or on behalf of"

12 issuers or "affiliates" of issuers. *See* 15 U.S.C. § 78bb(f)(3). Cowen was not an affiliate of

13 OCMCS, and as defined in the PSLRA – a definition which is equally applicable to SLUSA –

14 only an officer, director or employee of OCMCS can be deemed to speak on OCMCS's

15 "behalf." *See* Cowen's Opp. Memo. at 19-20. Accordingly, the "Delaware carve-out" cannot

16 save Plaintiffs' claims from SLUSA preemption.

17 **D.   Plaintiff's Claims For Negligent Misrepresentation And
           Negligence Fail To State A Claim.**
18
   Independent of SLUSA preemption, Plaintiffs have not pleaded a cognizable claim for
19
   either professional negligence or negligent misrepresentation under California law.
20
   Plaintiffs do not even try to challenge the clear holding of the California Supreme Court
21
   in *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370 (1992), which held that professionals owe a duty
22
   of care only to their clients and not to third parties.  *See, e.g., Glenn K. Jackson Inc. v. Roe*, 273
23
   F.3d 1192, 1199 (9th Cir. 2001). Indeed, Plaintiffs effectively concede the point when they
24
   admit that they "were not individual parties to any contract between Orange Coast and Cowen."
25
   Plaintiffs' Objs. to Goldstein Decl. at 3. As third parties, Plaintiffs have no standing to assert a
26

27 ---
   [4]  Tellingly, Delaware law is not even mentioned in the Complaint, which incorrectly
28 asserts that OCMCS was incorporated in California. Compl. ¶ 9.

REPLY MEMO. IN FURTHER SUPPORT OF DEFENDANTS'         -6-              Civil Case No. C-06-4886 (JSW)
MOTION TO DISMISS THE COMPLAINT

1 claim of professional negligence against Cowen. Their professional negligence claim must be

2 dismissed as a matter of California law. *See Bily*, 3 Cal. 4th at 406; *Mariani v. Price*

3 *Waterhouse*, 70 Cal. App. 4th 685, 697 (1999).

4 Plaintiffs' negligent misrepresentation claim is equally defective. Only "intended

5 beneficiaries" of a professional communication – and not merely foreseeable users – have

6 standing to bring a negligent misrepresentation claim. *Bily*, 3 Cal. 4th at 411. Plaintiffs clearly

7 were not intended beneficiaries of the Fairness Opinion, either in its original form as delivered

8 to the OCMCS Board of Directors or as later published in the Proxy Statement/Prospectus.

9 Intent to benefit third parties must clearly be made by the supplier of information and there is no

10 such manifestation of intent by Cowen in the Fairness Opinion. To the contrary, the Fairness

11 Opinion itself states that it "does not constitute a recommendation to any stockholder as to how

12 such stockholder should vote on the proposed Transaction." Ex. 4 at 206. The Proxy

13 Statement/Prospectus issued by OCMCS and SJMC further warned Plaintiffs that the Fairness

14 Opinion was not intended for their benefit:

15 > Cowen's analyses and opinion were *prepared for and addressed to OCMCS* and are directed only to the fairness, from a financial
16 > point of view, of the aggregate consideration to be paid in the Combined Merger and *do not* constitute an opinion as to the
17 > merits of the Combined Merger or a recommendation to any holders of OCMCS Voting Securities as to how to vote on the
18 > OCMCS Merger.

19 *Id.* at 73 (emphasis added).

20 In light of the plain language of the Fairness Opinion and Proxy Statement/Prospectus,

21 Plaintiffs cannot show the "intent to influence" that California law requires in order to state a

22 claim for negligent misrepresentation against a professional advisor. *Bily*, 3 Cal. 4th at 412; *see*

23 *also In re Quarterdeck Office Sys., Inc. Sec. Litig.*, No. 92-3970, 1992 WL 515347, at *8-9

24 (C.D. Cal. Nov. 4, 1992) (dismissing plaintiffs' negligent misrepresentation claim because,

25 among other things, plaintiffs were merely reasonably foreseeable users of allegedly misleading

26 statements). Plaintiffs can take no comfort in *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal.

27 App. 4th 282 (2004), for there, unlike here, plaintiff shareholders of an acquired corporation

28 alleged a *fraud* claim against attorneys for the acquiring corporation. The court of appeals

1  permitted the fraud claim to proceed because *Bily*'s "limitations on liability for negligence do
2  not apply to liability for fraud."[5]  *Id.* at 291; *see also Bily*, 3 Cal. 4th at 415 (finding auditors
3  liable to third parties for intentional misrepresentation).  Plaintiffs have not and cannot allege
4  fraud here; thus, *Vega* does not stand in the way of dismissal of their claim for negligent
5  misrepresentation.

6  **E.     The Complaint Should Be Dismissed Without Leave To Replead.**

7  Plaintiffs' request to replead their claims should be denied. Notwithstanding the general
8  rule that leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), it
9  is well-settled that a district court should deny a motion for leave to amend where, as here, the
10 requested amendment would be futile. *See, e.g.*, *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027,
11 1039 (9th Cir. 2002).

12 Plaintiffs cannot and should not be given the chance to "refine" their defective state-law
13 claims just so that "those claims fall outside SLUSA." Plaintiffs' Opp. Memo. at 14. The
14 Supreme Court has specifically admonished courts to apply SLUSA broadly to prevent
15 Plaintiffs from circumventing the PSLRA's limitations on federal securities claims by devising
16 state law claims. *See Dabit*, 126 S. Ct. at 1510-11. Having extensively litigated *Madden I*
17 through *Madden V* before two district court judges, two panels of the Ninth Circuit and the
18 Supreme Court over a six-year period, Plaintiffs cannot say they were unaware of SLUSA's
19 requirements.  If they could have pleaded a state-law claim that was not preempted by SLUSA,
20 presumably they would have done so. The futility of repleading is further underscored by the
21 fact that Plaintiffs' claims for professional negligence and negligent misrepresentation fail to
22 state a claim under California law.

23 It would be just as futile to give Plaintiffs a chance to plead claims under Section 14(a)
24 of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 14a-9, 17 C.F.R. § 240.14a-9. Any
25 such claim would be based on Cowen's Fairness Opinion as published in the Proxy
26 Statement/Prospectus. But Cowen's Fairness Opinion is just that – an opinion. To state a claim

---

[5]  A separate negligent misrepresentation claim was dismissed on the ground of plaintiffs' failure to allege a positive assertion by the defendant.  *See Vega*, 121 Cal. App. 4th at 291 n.6.

under Section 14(a) based on that opinion, Plaintiffs must allege particularized facts showing that Cowen's opinion was both objectively and *subjectively* false. *See Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1095 (1991) ("Under § 14(a), . . . [a] statement of belief may be open to objection . . . solely as a misstatement of the psychological fact of the speaker's belief in what he says."); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1265 (N.D. Cal. 2000) ("The teaching of *Virginia Bankshares* is that an opinion is only false if the speaker does not in fact hold that opinion.").

Plaintiffs have not come close to alleging that Cowen actually knew that any statements in its Fairness Opinion were false when made. At best, Plaintiffs suggest that Cowen had information "available" to it regarding the true state of FPA's business and that Cowen had an "incentive" to favor FPA, the high bidder in the auction for OCMCS, because of Cowen's 1% transaction fee.[6] Compl. ¶¶ 22-23. Such allegations do not state a cognizable claim under Section 14(a). *See In re McKesson*, 126 F. Supp. 2d at 1265. (finding that plaintiff "failed to state a Section 14 claim against Bear Stearns because it ha[d] not pleaded with particularity why [Bear Stearns's] fairness opinion was *knowingly* false") (emphasis added); *see also Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000) (observing that to state a claim under Section 14(a) and Rule 14a-9 a plaintiff must "demonstrate that the misstatement or omission [in the proxy solicitation] was made with the requisite level of culpability"). Plaintiffs should not be given an opportunity to plead a deficient Section 14(a) claim.

---

[6] As OCMCS and SJMC acknowledged at the time, such transaction fees are entirely standard: "the terms of the fee arrangement with Cowen, which are customary in mergers of this nature, were negotiated at arms' length between OCMCS and Cowen, and OCMCS was aware of such arrangements, including the fact that a significant portion of the aggregate fee payable to Cowen is contingent upon consummation" of the FPA merger. Ex. 4 at 77.

### III. Conclusion

For the reasons set forth above, in Cowen's Memorandum in Support of the Motion to Dismiss, in Cowen's Memorandum in Opposition to Plaintiffs' Motion to Remand, and in all of the papers previously filed herein, the Court should dismiss Plaintiffs' Complaint in its entirety without leave to amend.

DATED: October 13, 2006   COVINGTON & BURLING LLP

By: /s Linda C. Goldstein
Linda C. Goldstein
Attorneys for Defendants Cowen & Co.,
SG Cowen Securities Corporation, and
Cowen and Company, LLC

Of counsel:   David Jolley
Kimberly Zelnick
Margaret G. May