IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHARLES T MADDEN, et al.,

    Plaintiffs,

v.

COWEN & COMPANY, et al.,

    Defendants.

No. C 06-04886 JSW

**ORDER: (1) DENYING MOTION TO REMAND; AND (2) GRANTING MOTION TO DISMISS**

Now before the Court is the motion to remand filed by Plaintiffs and the motion to dismiss filed by Defendants. Having carefully reviewed the parties' papers, considered their arguments and the relevant authority, and good cause appearing, the Court hereby DENIES Plaintiffs' motion to remand and GRANTS Defendants' motion to dismiss.

**BACKGROUND**

Plaintiffs are sixty three individuals, mostly physicians, who were the former majority shareholders of privately-held corporations, Orange Coast Managed Care, Services, Inc. ("Orange Coast") and St. Joseph Medical Corporation ("St. Joseph"). (Compl., ¶¶ 1, 9, 11.) Orange Coast and St. Joseph wanted to explore their options in being sold or affiliating with an other entity. (*Id*. at ¶¶ 16-17.) Orange Coast formed an eight-member Special Committee, consisting of those directors without a conflict of interest. (*Id*. at ¶ 17.) Orange Coast and St. Joseph hired defendant Cowen & Company ("Cowen"), an investment bank, to serve as their financial advisor and provide advice about strategic alternatives. (*Id*. at ¶ 18.) Cowen agreed to provide advisory services such as: (a) assist in screening and analyzing

prospective acquirers; (b) assist with merger or acquisition negotiations; (c) advise about the financial and structural terms of an acquisition; (d) provide a comparative analysis of the value and risk of each bid received; and (e) render an opinion as to whether or not the financial terms of an acquisition were, from a financial point of view, fair to the shareholders of Orange Coast and St. Joseph. (*Id.* at ¶ 20; *see also* Declaration of Linda C. Goldstein ("Goldstein Decl."), Ex. 1.)[1]

Cowen solicited bids from four potential buyers. (Compl., ¶¶ 24-25.) St. Joseph's Hospital of Orange County offered to pay $40 million for all the shares of Orange Coast that it did not already own and part of St. Joseph would continue as a separate entity. (*Id.* at ¶ 26.) The other three bidders offered stock to acquire all of Orange Coast and St. Joseph. PhyCor offered stock valued at $30 million, MedPartners offered stock valued at $52.5 million, and FPA Medical Management ("FPA") made a preemptive bid requiring Orange Coast and St. Joseph to negotiate exclusively with FPA. In FPA's initial bid, it offered stock valued at $66.5 million at that time. (*Id.* at ¶ 26.)

Cowen prepared a book for Orange Coast and St. Joseph, summarizing these bids. Cown included a table of earning estimates for PhyCor, MedPartners and FPA and rated FPA's stock as "buy." The book prepared by Cowen did not raise any significant concerns about FPA's financial condition or prospects. (*Id.* at ¶ 28.) Plaintiffs allege that there was available information which raised significant concerns about FPA's financial condition and future prospects, but Cowen did not disclose such information or concerns to Orange Coast and St. Joseph. (*Id.*) Plaintiffs further allege that Cowen strongly urged the Special Committee to pursue FPA's bid, to the exclusion of all others, and warned the Committee that they had a fiduciary duty to maximize shareholder value by accepting FPA's bid. (*Id.* at ¶¶ 29-30.) At Cowen's behest, Orange County and St. Joseph entered into exclusive negotiations with FPA and then signed an agreement to merge into an FPA subsidiary in exchange for FPA stock then valued at $60 million. (*Id.* at ¶ 31.)

---

[1] The Court overrules Plaintiffs' evidentiary objections to Goldstein Declaration and attached exhibits.

2

On January 13, 1998, Cowen informed the Special Committee of its opinion that the financial terms of the proposed acquisition by FPA were financially fair and reaffirmed its recommendations about the superior value of the FPA transaction. (*Id*. at ¶ 34.) In reliance on Cowen's advice, the boards of directors of Orange Coast and St. Joseph concluded that the proposed FPA transaction was fair to, and in the best interests of, each company and their respective shareholders, and thus recommended the transaction to the shareholders. (*Id*. at ¶¶ 35-36.)

On January 20, 1998, Orange Coast, St. Joseph and FPA executed a Merger Agreement. (*Id*. at ¶ 37.) On February 5, 1998, Cowen issued a letter to Orange Coast formally providing its opinion as to the FPA transaction. Cowen stated what it had done to form its fairness opinion and reiterating its opinion that FPA's proposed acquisition of Orange Coast and St. Joseph would be fair, from a financial point of view ("Opinion Letter"). (*Id*. at ¶ 38; *see also* Goldstein Decl., Ex. 2.) The Opinion Letter provided that the opinion was only for the Orange Coast's Board of Directors and that no other party could rely on it without Cowen's express written consent. (Goldstein Decl., Ex. 2.)

On February 10, 1998, Cowen consented in writing to the inclusion of its fairness opinion in the registration statement that FPA filed with the Securities and Exchange Commission ("SEC"). (Compl., ¶ 41; *see also* Goldstein Decl., Ex. 3.) On February 11, 1998, FPA filed a Form S-4 Registration Statement with the SEC for permission to issue approximately 3.8 million shares of FPA common stock to consummate its acquisition of Orange Coast and St. Joseph. (Compl., ¶ 41; *see also* Goldstein Decl., Ex. 3.) The Form S-4 became effective on February 17, 1998. (Compl., ¶ 41.)

On February 17, 1998, Orange Coast and St. Joseph mailed a Prospectus to Plaintiffs, as their shareholders, which included Cowen's fairness opinion. (Compl. at ¶¶ 39, 41, 43; *see also* Goldstein Decl., Ex. 4.) Plaintiffs allege that FPA's acquisition of Orange Coast and St. Joseph "could only proceed only upon the affirmative vote" by the shareholders. (Compl., ¶ 42; *see also id*. at ¶ 43 ("the merger transaction proceeded only because of Plaintiffs' affirmative votes").) Plaintiffs further allege that, after receiving the Prospectus with Cowen's opinion,

3

they approved the Merger Agreement. (*Id*. at ¶ 43.) Plaintiffs contend that they relied on Cowen's representations to approve the Merger Agreement and "to consent to receive FPA stock in place of their Orange Coast and St. Joseph stock." (*Id*. at ¶ 44.)

Under the Merger Agreement, which became effective on March 20, 1998, FPA acquired Plaintiffs' controlling interest in Orange Coast and St. Joseph in exchange for an equally valued interest in FPA. (*Id*. at ¶¶ 44-45.)

On May 15, 1998, FPA disclosed that it intended to write down $200 million of its assets, which triggered a sharp decline in its share price. Two months later, FPA filed for bankruptcy. (*Id*. at ¶ 49.)

Based on the above alleged facts, Plaintiffs filed a lawsuit in the Superior Court of California in the County of San Francisco, asserting claims for negligent misrepresentation and professional negligence against Cowen. Defendants removed this action based on the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 77p(b)-(c) and 78bb(f)(1)-(2), and now move to dismiss Plaintiffs' claims as preempted by SLUSA.

Based on the same underlying acquisition of Orange County and St. Joseph by FPA, Plaintiffs filed an earlier action in state court against FPA's management, auditor, and financial advisor. (Goldstein Decl., Ex. 5 (Complaint in *Madden v. Deloitte & Touche*, Case No. 802244).) In their complaint in that action, Plaintiffs described the transaction as a "stock-for-stock merger." (*Id*., Ex. 5 at ¶ 2.) Plaintiffs asserted, *inter alia*, claims under the Securities Act of 1933 and claims for intentional and negligent misrepresentation. (*Id*., Ex. 5.) That suit was removed to federal court, and the district court subsequently dismissed Plaintiffs' state law claims as preempted by SLUSA. (*See* Exhibit A to Defendants' Motion to Dismiss.) The Ninth Circuit affirmed this dismissal. *See Madden v. Deloitte & Touche*, 118 Fed. Appx. 150, 153 (9th Cir. 2004).

**ANALYSIS**

4

**A.     Applicable Legal Standards.**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 7-8 (1983) (citation omitted); *see also* 28 U.S.C. § 1441.  However, federal courts are courts of limited jurisdiction. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  An action originally filed in state court may be removed to federal court only if the district court could have exercised jurisdiction over such action if initially filed there. 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987).  A district court must remand the case if it appears before final judgment that the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c).  Accordingly, the burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal.  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  Moreover, a court must construe the removal statute strictly and reject jurisdiction if there is any doubt regarding whether removal was proper.  *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *see also Gaus*, 980 F.2d at 566 ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.")

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule.'" *Caterpillar Inc. v. Williams*, 482 U.S. 382, 392 (1987).  The well-pleaded complaint rule recognizes that the plaintiff is the master of his or her claim.  "[H]e or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.*  Thus, under the well-pleaded complaint rule, federal-question jurisdiction arises where the "complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd.*, 463 U.S. at 27-28.

While a defense of pre-emption, also known as "ordinary pre-emption," is insufficient to demonstrate removal jurisdiction, "complete pre-emption," which is a corollary to the well-

pleaded complaint rule, would be a sufficient basis for removal. *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 344 (9th Cir. 1996). Under the complete pre-emption doctrine, the force of certain federal statutes is considered to be so "extraordinary" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987); *Rains*, 80 F.3d at 344. The Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 77p(b)-(c) and 78bb(f)(1)-(2) is a federal statute with such complete preemptive force. *Patenaude v. Equitable Life Assurance Sodicity of the United States*, 290 F.3d 1020, 1023-24 (9th Cir. 2002) ("SLUSA provides for the removal and dismissal of class actions brought pursuant to state law alleging misrepresentations in connection with the purchase or sale of a covered security.").

**B.     SLUSA Provides a Basis for Both Removing and Dismissing this Action.**

SLUSA provides for the removal and dismissal based on preemption of any covered "class action based upon the statutory or common law of any State ... by any private party alleging (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security. ..." *Patenaude*, 290 F.3d at 1023-24 (citing 15 U.S.C. § 77p(b)). Thus, to be preempted by SLUSA, a claim must be (1) a covered class action, (2) based on state law, (3) alleging an untrue statement or omission of material fact or manipulative or deceptive device or contrivance, (4) made "in connection with" the purchase or sale of (5) a "covered security." 15 U.S.C § 77p. Plaintiffs only dispute the last two elements and argue that their claims do not involve any misrepresentations made "in connection with" the purchase or sale of a "covered security."

**1.     "Covered Security."**

SLUSA defines "covered security" as "a security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 77r(b) of this title at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred ..." 15 U.S.C. § 77p(f)(3). Section 77r(b)(1), in turn, defines a security as a "covered

6

1 security" if it is "(A) listed, or authorized for listing ... on the National Market System of the
2 Nasdaq Stock Market ..." 15 U.S.C. § 77r(b)(1).

3 FPA registered the common stock at issue by February 17, 1998. On February 17, 1998,
4 Plaintiffs were sent a prospectus which included Cowen's fairness opinion. (Compl., ¶¶ 39, 41,
5 43; *see also* Goldstein Decl., Ex. 4.) Nevertheless, Plaintiffs argue that Cowen's alleged
6 misrepresentations were not made in connection with a "covered security" because they were
7 made before February 5, 1998, before the FPA issued the common stock for the merger.
8 However, Plaintiffs are barred from litigating this issue based on collateral estoppel. Collateral
9 estoppel, or issue preclusion, bars "relitigation of issues actually litigated and necessarily
10 decided, after a full and fair opportunity for litigation, in a prior proceeding." *Shaw v. Hahn,* 56
11 F.3d 1128, 1131 (9th Cir.1995). "A federal court decision has preclusive effect where (1) the
12 issue necessarily decided at the previous proceeding is identical to the one which is sought to be
13 relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party
14 against whom collateral estoppel is asserted was a party or in privity with a party at the first
15 proceeding." *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005). All of three of these
16 elements are satisfied here.

17 In a prior, related action by Plaintiffs against FPA's management, auditor, and financial
18 advisor, Plaintiffs similarly argued that their alleged misrepresentations were last made prior to
19 February 17, 1998 and thus, that they did not allege any misrepresentations made in connection
20 with "covered securities." The district court held that it did not need to resolve whether the
21 alleged misrepresentations made before February 17, 1998 were in connection with "covered
22 securities" because Plaintiffs also sought damages for misrepresentations that were made after
23 the SEC approved the registration of the subject securities. (Exhibit A to Defendants' Motion
24 to Dismiss (Slip. Op. at 9).) The district court specifically noted that Plaintiffs alleged
25 misrepresentations were contained in the Prospectus and that the Prospectus was mailed to

7

1 Plaintiffs sometime after February 17, 1998.[2] (*Id*.) Thus, the court concluded that because the
2 alleged misrepresentations in the Prospectus "occurred after the registration of the FPA shares
3 issued to consummate the merger, the First Amended Complaint clearly alleges 'an untrue
4 statement or omission of a material fact in connection with the purchase or sale of a covered
5 security.'" (*Id*. (Slip. Op. at 9, citing 15 U.S.C. §§ 77p(b), 77bb(f)(1)).) Accordingly, the court
6 held that SLUSA applied and preempted Plaintiffs' state law claims. In an unpublished
7 opinion, the Ninth Circuit affirmed the district court on appeal. *See Madden v. Deloitte &
8 Touche, LLP*, 118 Fed. Appx. 150, 153 (9th Cir. 2004).

9 Thus, in a final judgment on the merits in a prior proceeding to which Plaintiffs were a
10 party, a court determined that misrepresentations contained within the Prospectus – the same
11 Prospectus at issue here – were misrepresentations made in connection with "covered
12 securities." Accordingly, Plaintiffs are barred by collateral estoppel from relitigating the issue
13 of whether misrepresentations contained with the Prospectus were made in connection with
14 "covered securities."

15 Even if the opinion in *Madden v. Deloitte & Touche* did not have collateral estoppel
16 effect, this Court agrees with the reasoning of the district court. Although Plaintiffs dispute that
17 the statements within Prospectus should be considered a misrepresentation and argue instead
18 that the last alleged misrepresentation was made on February 5, 1998, Plaintiffs allege that
19 Cowen's fairness opinion was distributed to the shareholders in the Prospectus and was relied
20 upon by the Plaintiffs in approving the merger agreement. (Compl., ¶¶ 43, 44.) Moreover, in
21 their motion to remand, Plaintiffs themselves rely on the fairness opinion distributed to
22 Plaintiffs in the Prospectus to argue that their claims against Cowen fall within an exception to
23 the preemptive scope of the SLUSA. (Remand Mot. at 13.) The district court in *Madden v.
24 Deloitte & Touche* held that because the Plaintiffs identified statements made after the SEC
25 approved the registration of the subject FPA securities, including those made in the Prospectus,
26 the complaint clearly alleged misrepresentations in connection with "covered securities."

---

[2] In its order, the district court referred to the date the Prospectus was mailed as February 17, "2000." This date appears to be a typographical error. It is clear from the context of the order that the court meant "1998."

8

Therefore the district court found that it did not need to resolve the dispute as to whether statements made before the specific securities were registered. (Exhibit A to Defendants' Motion to Dismiss (Slip. Op. at 9).) This Court agrees. Because Plaintiffs' allege misrepresentations which were made after the FPA shares at issue were registered, the Court need not resolve whether alleged misrepresentations made prior to February 17, 1998 were also made in connection with "covered securities."

### 2. "In connection with."

Plaintiffs argue that their claims do not concern alleged misrepresentations made "in connection with" covered securities, because, they contend, "Cowen acted in connection with the non-covered Orange Coast and St. Joseph securities that Plaintiffs already owned, not the FPA securities they later received." (Opp. to Motion to Dismiss at 1.) The Court rejects Plaintiffs' attempt to distance Cowen's alleged conduct from the FPA transaction and their receipt of FPA stocks.

Plaintiffs allege that Orange Coast and St. Joseph wanted to explore their options in being sold or affiliating with any entity. (Compl., ¶¶ 16-17.) They hired Cowen to provide advisory services to them, including screening and analyzing prospective acquirers, assisting with and advising them on negotiating and structuring an acquisition, and opining as to whether or not the financial terms of an acquisition were fair, from a financial point of view, to the shareholders of Orange Coast and St. Joseph. (*Id.* at ¶ 20; Goldstein Decl., Ex. 1.) According to Plaintiffs, among the bids initially received, Cowen urged Orange Coast and St. Joseph to chose the proposed acquisition by FPA. (Compl., ¶¶ 29-30.) Cowen opined that the financial terms of the proposed FPA transaction were financially fair. (*Id.* at ¶ 34.) Plaintiffs allege that in reliance on Cowen's opinion, they approved the FPA transaction and consented to receiving FPA stock in exchange for their stock in Orange Coast and St. Joseph. (*Id.* at ¶¶ 43-44.)

Because this Court already concluded that the alleged misrepresentations concerned "covered securities," the conclusion that the alleged misrepresentations were made "in connection with" such securities is inescapable. Cowen's alleged misconduct has "more than some tangential relation" to the FPA transaction in which Plaintiffs received FPA stock in

9

exchange for their Orange Coast and St. Joseph stock. *See Falkowski v. Imation Corp.*, 309 F.3d 1123, 1130-31 (9th Cir. 2002) ("the fraud is in connection with the securities transaction if it coincides with the transaction" and has "more than some tangential relation to the securities transaction") (internal quotes and citation omitted); *see also Securities and Exchange Commission v. National Securities, Inc.*, 393 U.S. 453, 467 (1969) (holding that alleged statements misleading shareholders to approve a merger in which the shareholders received stocks from the new company involved misstatements made in connection with the purchase or sale of securities). Accordingly, the Court finds that the alleged misrepresentations were made "in connection with" covered securities.

### 3. Delaware Carve-Out.

Plaintiff argues that even if this case does involve misrepresentations made in connection with the purchase or sale of covered securities, this case should be remanded based on the narrow exclusion within SLUSA which allows for the preservation of certain actions in state court. This exclusion has been referred to as the "Delaware carve-out," and provides, in pertinent part, that a covered class action may be maintained if it is based upon the statutory or common law of the State in which the issuer is incorporated and if it involves:

> (ii) any recommendation, position, or other communication with respect to the sale of securities of the issuer that--
> (I) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and
> (II) concerns decisions of those equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

15 U.S.C. §§ 77p(d)(1), 78bb(f)(3)(A). Plaintiffs contend that Cowen's Opinion Letter, included in the Prospectus sent to them as shareholders of Orange Coast and St. Joseph, constitutes a communication made by or on behalf of Orange Coast and St. Joseph, the "issuers" of equity securities. The Court disagrees.

Plaintiffs attempt to bootstrap Cowen's Opinion Letter and attribute it as one made "by" Orange Coast and St. Joseph because Orange Coast and St. Joseph included Cowen's Opinion Letter in the Prospectus. Perhaps if Plaintiffs were alleging that Orange Coast and St. Joseph adopted the Cowen's opinion and were suing Orange Coast and St. Joseph for its

10

communications, the Court would find Plaintiffs' argument more persuasive. However, Plaintiffs have not alleged any wrongful conduct or involvement by Orange Coast and St. Joseph, but rather, they are suing Cowen directly for its opinion and advice regarding the FPA transaction. The Court thus rejects Plaintiffs argument that the inclusion of the Opinion Letter in the Prospectus transformed the opinion to one made "by" Orange Coast and St. Joseph.

Nor does the Court find that Cowen issued its opinion "on behalf of" Orange Coast and St. Joseph. Although SLUSA does not define "on behalf of," the Court finds it significant that the Private Securities Litigation Reform Act ("PSLRA"), a related statute, defines "Person acting on behalf of an issuer" to mean "an officer, director, or employee of the issuer." *See* 15 U.S.C.A. § 77z-2(I)(6); *cf Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) ("when Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes").

Defining, and thus limiting, those acting "on behalf of an issuer" to officers, directors and employees of the issuer is supported by the fact that the only cases that have remanded cases based on the Delaware carve-out have been cases involving communications made directly by the corporation that issued securities to the plaintiffs, or by officers and directors of such corporations. *See e.g. Greaves v. McAuley*, 264 F. Supp. 2d 1078, 1083-84 (N.D. Ga. 2003) (finding fiduciary duty claims by former shareholders against former company and its board members covered by the Delaware carve-out but finding claims against acquiring company did not meet the requirements of the exception); *Alessi v. Beracha*, 244 F. Supp. 2d 354, 358-59 (D. Del. 2003) (remanding action by former shareholders against former company and its officers and directors for claims of breach of fiduciary duties); *Lazar v. Gergerson*, 2002 U.S. Dist. LEXIS 6152, *6-12 (N.D. Cal. April 5, 2002) (remanding action by former shareholders of company alleges causes of action of breach of fiduciary duty and breach of the duty of candor and full disclosure against company's former chairman); *Gibson v. PS Group Holdings, Inc.*, 2000 U.S. Dist. LEXIS 3158, *11-16 (S.D. Cal. March 8, 2000) (remanding shareholder class action raising fiduciary duty claims against corporation and its officers and

11

directors); *Klein v. Southwest Gas Corp.*, 1999 U.S. Dist. LEXIS 22979, *2-5 (S.D. Cal. Aug. 3, 1999) (remanding shareholder class action suit alleging violations of fiduciary duties by company's board members)

The legislative history from the Senate Banking Committee discussing the Delaware carve-out further confirms that Plaintiffs are attempting the broaden the scope of this exemption in a way that it was simply not intended to apply. Plaintiffs seek to apply the exemption, not to statements made by the issuer of securities, but to a company that provided services to the issuer. As stated in the report from the Committee, the reason for the exemption was as follows:

> The SEC, as well as other commentators, also noted the need to exempt from the legislation shareholder-initiated litigation based on breach of fiduciary duty of disclosure, in connection with certain corporate actions, that is found in the law of some states, most notably Delaware.
>
> The Committee is keenly aware of the importance of state corporate law, specifically those states that have laws that establish a fiduciary duty of disclosure. It is not the intent of the Committee in adopting this legislation to interfere with state law regarding the duties and performance of an issuer's directors or officers in connection with a purchase or sale of securities by the issuer or an affiliate from current shareholders or communicating with existing shareholders with respect to voting their shares, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

S. Rep. No. 105-182, at 6 (1998). Thus, the Delaware carve-out was concerned with preserving states' governance of their corporate law, and more specifically, laws relating to fiduciary duties of disclosure. Plaintiffs are not asserting any claims for breach of fiduciary duty. *See Gibson*, 2000 U.S. Dist. LEXIS 3158, *11 (defining exception as one which "permits plaintiffs to bring class action lawsuits where a corporation or its principals breach a fiduciary duty of disclosure to existing shareholders"); *see also Wald v. C.M. Life Ins. Co.*, 2001 WL 256179, *7 (N.D. Tex. March 8, 2001) (holding "Delaware carve-out" did not apply because the plaintiff did not allege "the requisite breach of fiduciary duty"). The Court thus finds that the Delaware carve-out is inapplicable. Accordingly, the Court denies Plaintiffs' motion to remand and grants Cowen's motion to dismiss.

**4.     Leave to Amend.**

12

Plaintiffs ask for leave to amend to plead a federal securities claim and to "refine" their state law claims. The Court grants Plaintiffs leave to amend, but cautions that Plaintiffs cannot avoid the application of this Order by omitting facts to plead around SLUSA. Plaintiffs may only allege additional facts that are consistent with their original complaint. *See Reddy v. Litton Industries, Inc.*, 912 F.2d 291, 296 -297 (9th Cir. 1990) (noting that "[a]lthough leave to amend should be liberally granted, the amended complaint may only allege other facts consistent with the challenged pleading.") (internal quotes and citation omitted).

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' motion to remand and GRANTS Defendants' motion to dismiss with leave to amend.

**IT IS SO ORDERED.**

Dated: March 8, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE