IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES T MADDEN, et al., | |
| Plaintiffs, | No. C 06-04886 JSW |
| v. | |
| COWEN & COMPANY, et al., | **ORDER UPON REMAND: (1) GRANTING MOTION TO REMAND; AND (2) DENYING MOTION TO DISMISS** |
| Defendants. | |

Now before the Court, upon remand from the Ninth Circuit, is the motion to remand filed by Plaintiffs and the motion to dismiss filed by Defendants. These matters are now fully briefed and ripe for decision. The Court finds that these matters are appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civ. L.R. 7-1(b). Accordingly, the hearing set for April 16, 2010 is VACATED. Having carefully reviewed the parties' papers, considered their arguments and the relevant authority, and good cause appearing, the Court hereby GRANTS Plaintiffs' motion to remand and DENIES Defendants' motion to dismiss.

**BACKGROUND**

Plaintiffs are sixty three individuals, mostly physicians, who were the former majority shareholders of privately-held corporations, Orange Coast Managed Care, Services, Inc. ("Orange Coast") and St. Joseph Medical Corporation ("St. Joseph"). (Compl., ¶¶ 1, 9, 11.) Orange Coast and St. Joseph wanted to explore their options in being sold or affiliating with another entity. (*Id*. at ¶¶ 16-17.) Orange Coast formed an eight-member Special Committee, consisting of those directors without a conflict of interest. (*Id*. at ¶ 17.)

1   According to Plaintiffs' complaint, Orange Coast and St. Joseph hired defendant Cowen
2   & Company ("Cowen"), an investment bank, to serve as their financial advisor and provide
3   advice about strategic alternatives. (*Id.* at ¶ 18.)[1] Cowen agreed to provide advisory services
4   such as: (a) assist in screening and analyzing prospective acquirers; (b) assist with merger or
5   acquisition negotiations; (c) advise about the financial and structural terms of an acquisition; (d)
6   provide a comparative analysis of the value and risk of each bid received; and (e) render an
7   opinion as to whether or not the financial terms of an acquisition were, from a financial point of
8   view, fair to the shareholders of Orange Coast and St. Joseph. (*Id.* at ¶ 20; *see also* Declaration
9   of Linda C. Goldstein dated August 16, 2006 ("Goldstein Decl."), Ex. 1.)[2]

10   Cowen solicited bids from four potential buyers, including one from FPA Medical
11   Management ("FPA") . (Compl., ¶¶ 24-26.) FPA made a preemptive bid requiring Orange
12   Coast and St. Joseph to negotiate exclusively with FPA. In FPA's initial bid, it offered stock
13   valued at $66.5 million at that time. (*Id.* at ¶ 26.) Cowen prepared a book for Orange Coast and
14   St. Joseph, summarizing the four bids. The book prepared by Cowen did not raise any
15   significant concerns about FPA's financial condition or prospects. (*Id.* at ¶ 28.)

16   Plaintiffs allege that there was available information which raised significant concerns
17   about FPA's financial condition and future prospects, but Cowen did not disclose such
18   information or concerns to Orange Coast and St. Joseph. (*Id.*) Plaintiffs further allege that
19   Cowen strongly urged the Special Committee to pursue FPA's bid, to the exclusion of all
20   others, and warned the Committee that they had a fiduciary duty to maximize shareholder value
21   by accepting FPA's bid. (*Id.* at ¶¶ 29-30.) At Cowen's behest, Orange County and St. Joseph
22   entered into exclusive negotiations with FPA and then signed an agreement to merge into an
23   FPA subsidiary in exchange for FPA stock then valued at $60 million. (*Id.* at ¶ 31.)

24   On January 13, 1998, Cowen informed the Special Committee of its opinion that the
25   financial terms of the proposed acquisition by FPA were financially fair and reaffirmed its
26   recommendations about the superior value of the FPA transaction. (*Id.* at ¶ 34.). The boards of

---

[1] Cowen submits evidence demonstrating that it was hired by Orange Coast only.

[2] The Court GRANTS Plaintiffs' request for judicial notice. *See* Fed. R. Evid. 201.

2

1 directors of Orange Coast and St. Joseph then concluded that the proposed FPA transaction was
2 fair to, and in the best interests of, each company and their respective shareholders, and thus
3 recommended the transaction to the shareholders. (*Id*. at ¶¶ 35-36.)

4   On January 20, 1998, Orange Coast, St. Joseph and FPA executed a Merger Agreement.
5 (*Id*. at ¶ 37.) On February 5, 1998, Cowen issued a letter to Orange Coast formally providing
6 its opinion as to the FPA transaction. Cowen stated what it had done to form its fairness
7 opinion and reiterating its opinion that FPA's proposed acquisition of Orange Coast and St.
8 Joseph would be fair, from a financial point of view ("Opinion Letter"). (*Id*. at ¶ 38; *see also*
9 Goldstein Decl., Ex. 2.) The Opinion Letter provided that the opinion was only for the Orange
10 Coast's Board of Directors and that no other party could rely on it without Cowen's express
11 written consent. (Goldstein Decl., Ex. 2.)

12   On February 10, 1998, Cowen consented in writing to the inclusion of its fairness
13 opinion in the registration statement that FPA filed with the Securities and Exchange
14 Commission ("SEC"). (Compl., ¶ 41; *see also* Goldstein Decl., Ex. 3.) On February 11, 1998,
15 FPA filed a Form S-4 Registration Statement with the SEC for permission to issue
16 approximately 3.8 million shares of FPA common stock to consummate its acquisition of
17 Orange Coast and St. Joseph. (Compl., ¶ 41; *see also* Goldstein Decl., Ex. 3.) The Form S-4
18 became effective on February 17, 1998. (Compl., ¶ 41.)

19   On February 17, 1998, Orange Coast and St. Joseph mailed a Prospectus to Plaintiffs, as
20 their shareholders, which included Cowen's fairness opinion. (Compl. at ¶¶ 39, 41, 43; *see also*
21 Goldstein Decl., Ex. 4.) The opinion letter included in the Prospectus deleted the statement that
22 the opinion was only for the Orange Coast's Board of Directors and that no other party could
23 rely on it without Cowen's express written consent. (Goldstein Decl., Ex. 4.) Plaintiffs allege
24 that FPA's acquisition of Orange Coast and St. Joseph "could only proceed only upon the
25 affirmative vote" by the shareholders. (Compl., ¶ 42; *see also id*. at ¶ 43 ("the merger
26 transaction proceeded only because of Plaintiffs' affirmative votes").) Plaintiffs further allege
27 that, after receiving the Prospectus with Cowen's opinion, they approved the Merger
28 Agreement. (*Id*. at ¶ 43.) Plaintiffs contend that they relied on Cowen's representations to

**United States District Court**
For the Northern District of California

approve the Merger Agreement and "to consent to receive FPA stock in place of their Orange Coast and St. Joseph stock." (*Id*. at ¶ 44.)

Under the Merger Agreement, which became effective on March 20, 1998, FPA acquired Plaintiffs' controlling interest in Orange Coast and St. Joseph in exchange for an equally valued interest in FPA. (*Id*. at ¶¶ 44-45.)

On May 15, 1998, FPA disclosed that it intended to write down $200 million of its assets, which triggered a sharp decline in its share price. Two months later, FPA filed for bankruptcy. (*Id*. at ¶ 49.)

Based on the above alleged facts, Plaintiffs filed a lawsuit in the Superior Court of California in the County of San Francisco, asserting claims for negligent misrepresentation and professional negligence against Cowen. Defendants removed this action based on the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 77p(b)-(c) and 78bb(f)(1)-(2), and now move to dismiss Plaintiffs' claims as preempted by SLUSA. This Court initially determined that this action was preempted by SLUSA and, thus, granted Cowen's motion to dismiss. However, the Ninth Circuit reversed and vacated this Court's judgment and remanded this action for further consideration.

## ANALYSIS

Upon remand, the Ninth Circuit resolved most of the issues underlying the parties' motions. The court determined that the covered state law class action involves a misrepresentation that was made "in connection with" the purchase of a "covered security." Therefore, SLUSA precludes this action unless the "Delaware carve-out" exception applies. The "Delaware carve-out" provides, in pertinent part, that a covered class action may be maintained if it is based upon the statutory or common law of the State in which the issuer is incorporated and if it involves:

> (ii) any recommendation, position, or other communication with respect to the sale of securities of the issuer that--
>     (I) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and
>     (II) concerns decisions of those equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

4

15 U.S.C. §§ 77p(d)(1), 78bb(f)(3)(A). The Ninth Circuit rejected this Court's construction of "on behalf of the issuer" as being limited to an officer, director, or employee of the issuer and held that both Orange Coast and St. Joseph could potentially be "the issuer" on whose behalf Cowen made its alleged misrepresentation. The Ninth Circuit held that "on behalf of" means "in the interest of, as a representative of, or for the benefit of." *See Madden v. Cowen & Co.*, 576 F.3d 957, 973 (9th Cir. 2009). The court further held that this action was based on California law and that because Orange Coast is incorporated in Delaware, the Delaware carve-out does not preserve Plaintiffs' action "to the extent it involves misrepresentations made solely on behalf of Orange Coast." *Id.* at 972. Although the complaint sufficiently alleges that Cowen's communication was made "on behalf of" St. Joseph for purposes of the Delaware carve-out, the Ninth Circuit remanded the action to provide this Court with an opportunity to exercise its discretion to consider evidence outside of the pleadings and "determine, in the first instance, whether Cowen's fairness opinion constituted a communication 'on behalf of' St. Joseph." *Id.* at 974. Finally, the Ninth Circuit clarified that Cowen bears the burden of demonstrating that the carve-out is inapplicable to Plaintiffs' complaint. In other words, Cowen bears the burden of demonstrating that its fairness opinion was made solely on behalf of Orange Coast to the shareholders of Orange Coast.

Cowen has submitted evidence demonstrating that it was hired by Orange Coast only, and not St. Joseph. (Declaration of Linda Goldstein dated February 12, 2010, Exs. A, C, D.) Nevertheless, Cowen appears to have solicited and negotiated bids on behalf of both Orange Coast and St. Joseph. (Reply Declaration of Christopher C. Ohman ("Ohman Reply Decl."), ¶¶ 3-5, Exs. A, B.) Moreover, Cowen's fee was calculated based on the sale of both Orange Coast and St. Joseph. (Goldstein Decl., Exs 3, 4; *see also* Ohman Reply Decl., ¶ 7, Ex. C.) Therefore, although Orange Coast may have been the sole company to hire and pay for Cowen's services, there is some ambiguity regarding whether Cowen actually conducted services on behalf of St. Joseph as well. Additionally, the fairness opinion letter was included in a joint Prospectus that was mailed to both Orange Coast's and St. Joseph's shareholders. (Goldstein Decl., Ex. 4.) The opinion letter included in the Prospectus deleted the statement that the opinion was only for

5

the Orange Coast's Board of Directors and that no other party could rely on it without Cowen's express written consent. (*Compare* Goldstein Decl., Ex. 3 *with* Goldstein Decl., Ex. 4.) Moreover, although the opinion letter was addressed to Orange Coast and that Cowen acted as Orange Coast's financial advisor, the letter explained that Cowen provided an opinion as to whether the consideration for the entire transaction – the sale of both Orange Coast and St. Joseph – was fair from a financial point of view. Cowen stated that it reviewed financial statements, financial projections, and the valuation of both Orange Coast and St. Joseph. Therefore, again, the Court finds that there is significant ambiguity regarding whether, in providing the opinion letter, Cowen was acting in the interest of, as a representative of, or for the benefit of St. Joseph. Based on the evidence presented, the Court finds that Cowen has not met its burden to demonstrate that its fairness opinion was made solely on behalf of Orange Coast to the shareholders of Orange Coast and that the carve-out is inapplicable.[3] Accordingly, the Court grants Plaintiffs' motion to remand and denies Cowen's motion to dismiss.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion to remand and DENIES Defendants' motion to dismiss. This matter is REMANDED to the Superior Court of the State of California for the City and County of San Francisco. The Clerk is directed to remand this action forthwith.

**IT IS SO ORDERED.**

Dated: April 14, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

[3] Because the Court finds that Cowen failed to demonstrate that its fairness opinion was made solely on behalf of Orange Coast to the shareholders of Orange Coast, the Court need not address Plaintiffs' alternative argument that the fairness opinion was made on behalf of Orange Coast as "an affiliate" of St. Joseph.